FILED
MAR 31 2014
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Kevin Wayne Martin and Susan Martin,<br><br>Debtors. | Case No. 11-62436-B-7 |
| Kevin Wayne Martin, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Internal Revenue Service,<br><br>Defendant. | Adv. No. 12-1131<br><br>DC No. US-1 |

**MEMORANDUM DECISION REGARDING MOTION FOR SUMMARY JUDGMENT**

Boris Kukso, Esq., appeared on behalf of the moving party and defendant, the Internal Revenue Service.

The debtors and plaintiffs, Kevin Wayne Martin and Susan Martin, appeared *in propria persona*.

Before the court is a motion for summary judgment (the "Motion") brought by the defendant in this adversary proceeding, the Internal Revenue Service (the "IRS"). This Motion is opposed by the debtors and plaintiffs, Kevin and Susan Martin (the "Martins"), who have asked the court to rule in their favor based on the same set of undisputed facts. The Martins seek a determination that their debt to the IRS, arising

from personal income taxes owed for the years 2004, 2005, and 2006, has been discharged in this chapter 7 case. The IRS argues that the taxes are excepted from the discharge by application of 11 U.S.C. § 523(a)(1)(B)(i)[1] because the Martins' Form 1040 tax returns were not filed until *after* the IRS made assessments of the Martins' tax liability and initiated collection efforts. There are numerous decisions dealing with this problem, and the courts are split on the correct result. The "minority" view essentially holds that the timing of the filing of a tax return, as opposed to the return's form and content, is not a consideration under § 523(a)(1)(B)(i). For the reasons set forth below, this court finds the minority view on this issue to be persuasive. Accordingly, the IRS's Motion will be denied, and judgment will be entered in favor of the Martins.

The bankruptcy court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 523, and General Orders No. 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**BACKGROUND AND UNDISPUTED FACTS.**

There are no triable issues of material fact in this adversary proceeding, and the parties have not disputed the admissibility of the proffered documents. Accordingly, the court has considered all of the documents which the parties have filed with their various pleadings, the detailed chronology of facts offered by the IRS in its separate statement of undisputed facts, and the Martins' opposition to the Motion. The history of this matter appears to be fully and fairly set forth in the IRS's Motion and accompanying papers.

**The Late-Filed Tax Returns.** The Martins did not file their federal income tax returns for the 2004, 2005, and 2006 tax years when those returns became due. As a

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 119 Stat. 23. References to "IRC" are to the Internal Revenue Code, 26 U.S.C. §§ 1–9834.

result, the IRS initiated an audit examination on June 16, 2008, to determine the Martins' tax liability for those three tax years. On August 19, 2008, the IRS mailed to the Martins a notice of deficiency for each of the three years.[2] The notice of deficiency, also known as a "90-day letter," informs taxpayers that they may file a petition with the tax court for a redetermination of the deficiency within 90 days of the mailing of the notice.[3] The Martins did not respond to the 90-day letter or seek relief from the tax court.

Instead, beginning on August 28, 2008, a few days after receiving the 90-day letter, the Martins sought the services of an accountant named Andrea Shallcross to prepare their tax returns. Ms. Shallcross completed and signed the Martins' Form 1040 tax returns for each of the three tax years on December 18, 2008. However, for reasons unclear to the court, the Martins did not sign and file the Form 1040s until several months later.

On March 16, 2009, having not received anything from the Martins, the IRS made assessments of the Martins' tax liability for the years 2004, 2005, and 2006, in the amounts of $18,432, $9,928, and $32,133, respectively, along with interest and penalties.[4] The IRS issued its first notice of unpaid balance and demand for payment to the Martins on the same date. Its second notice was issued on April 20, 2009. On May 25, 2009, having still received nothing from the Martins, the IRS finally gave the Martins a due process notice informing them of its intent to collect the assessed tax liability by levy.[5]

Shortly thereafter, on June 2, 2009, the Martins signed and mailed to the IRS their previously completed Form 1040s for the three tax years at issue. These returns stated

---

[2] *See* IRC § 6212(a).

[3] *See* IRC § 6213(a).

[4] *See* IRC §§ 6201, 6203.

[5] *See* IRC § 6331(d).

the Martins' tax liability to be $17,358 for the year 2004, a $1,074 decrease from the IRS's assessment; $14,852 for the year 2005, a $4,924 increase from the assessment; and $27,010 for the year 2006, a $5,123 decrease from the assessment. The IRS accepted the Martins' three Form 1040s and adjusted its assessments to match the amounts stated therein.[6]

**The Bankruptcy and the Adversary Proceeding.** Although the Martins finally filed their missing Form 1040s, they have yet to pay any of the taxes. In November 2011, the Martins filed a voluntary petition under chapter 7. Based on their schedules, the Martins own a modest home in Bishop, California, valued at $210,000 with two mortgages totaling $131,500. They also own personal property worth a total of $9,950, which includes two old automobiles, one of which was subject to a secured claim in the amount of $5,800. All of their property was claimed exempt. According to schedules I and J, Mr. Martin was at the time unemployed and disabled, his only income being social security benefits. Mrs. Martin was regularly employed. Their combined gross income was $2,735 per month.

The Martins' schedule E listed two priority creditors, the California Franchise Tax Board with a claim scheduled in the amount of $12,600 and the IRS with a claim scheduled in the amount of $102,000. Schedule F listed unsecured claims in the amount of $31,262. The Martins received their chapter 7 discharge on February 27, 2012. No proofs of claim were filed, and the case was closed as a "no-asset" case on March 2, 2012.

The Martins commenced this adversary proceeding, without the assistance of an attorney, on July 30, 2012. They filed and served on the IRS a document entitled "Adversary Complaint," which stated simply, "We cannot afford to pay off our IRS tax

---

[6] For 2004, the IRS abated $1,074 of the tax liability, decreasing the assessment to $17,358; for 2005, it assessed an additional $4,924 in liability, increasing the assessment to $14,852; and for 2006, the IRS abated $5,123 of the liability, decreasing the assessment to $27,010.

debts for the years 2004, 2005 and 2006."[7] Attached to the complaint were copies of four documents offered to show that Mr. Martin is permanently disabled and undergoing serious medical treatment. The form and content of the pleading did not comply with the procedural rules for the commencement of an adversary proceeding, specifically Federal Rules of Civil Procedure 8(a) and 10. However, the IRS filed a responsive pleading that focused immediately on the issue to be decided. It denied the substantive allegations in the complaint and alleged, as an affirmative defense, that the adjusted tax assessments for 2004, 2005, and 2006 were excepted from discharge by application of § 523(a)(1)(B)(i). The IRS prayed "[t]hat the Court adjudicate the interest of the parties."[8]

After the Martins filed an "amended" complaint,[9] the court held a status conference at which the Martins and the IRS appeared telephonically. After some discussion, the parties agreed to move forward with the adversary proceeding, notwithstanding the procedural irregularities with the Martins' pleadings. By that time, the issues were clearly framed in the IRS's responsive pleading, and there appeared to be few, if any, disputed facts. The court then instructed the parties to meet and confer in an effort to work out a stipulated statement of undisputed facts for resolution of the matter by summary judgment. Neither party requested an evidentiary hearing, and this Motion is the result of those discussions.

///

///

---

[7] Pls.' Compl. 1, July 30, 2012, ECF No. 1.

[8] Def.'s Answer 3:2, Nov. 8, 2012, ECF No. 13.

[9] One of the documents attached to the original pleading contained personal identifying information, which should not have been placed in the public record pursuant to Bankruptcy Rule 9037. On December 14, 2012, this court issued an order restricting the original pleading from public access and requiring that the Martins file a properly redacted form of the pleading. A one-page "Amended Complaint" was then filed on January 18, 2013.

**SUMMARY JUDGMENT STANDARD.**

Summary judgment in favor of the moving party is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), *incorporated by* Fed. R. Bankr. P. 7056. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

The parties may use summary judgment to dispose of all or part of the asserted claims for relief. *See* Fed. R. Civ. P. 56(a). Additionally, the court may *sua sponte* grant summary judgment in favor of the nonmoving party, as long as "the moving party against whom summary judgment [is] rendered had a full and fair opportunity to ventilate the issues involved in the motion." *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982). The filing of a formal cross-motion is not necessary. *See* Fed. R. Civ. P. 56(f); *Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985).

As noted above, there are no disputed issues of material fact. All of the facts necessary to decide this case have been fully and fairly presented by the IRS in its Motion and supporting papers. Based on the number of reported decisions dealing with this § 523(a)(1)(B)(i) issue on virtually identical facts and the fact that they have been cited in the IRS's papers, it is clear that the IRS is very familiar with all of the arguments on the issue and that it has had a full and fair opportunity to brief those arguments in this case. Therefore, this adversary proceeding appears to be ripe for resolution by summary judgment.

///

**ISSUE PRESENTED.**

It is undisputed that in June 2009, the Martins filed three Form 1040s for the 2004, 2005, and 2006 tax years. Those documents were filed approximately three months after the IRS assessed the Martins' tax liability for the subject tax years and more than two years before the commencement of the Martins' bankruptcy case.

The IRS contends that the Martins' tax debt is excepted from their discharge under § 523(a)(1)(B)(i) because the Martins did not file their tax returns until *after* the IRS made its assessments and began its collection efforts. It offers two theories in support of its position. First, according to the IRS, when an assessment is made, the resulting "debt" is based on the assessment, not upon the subsequently filed tax return. This tax debt cannot be dischargeable under § 523(a)(1)(B)(i) if it is not actually based on a filed tax return. Alternatively, the IRS contends that a Form 1040, filed after an assessment is made and collection efforts are initiated, does not constitute a "return" within the meaning of § 523(a)(1)(B) for purposes of determining dischargeability. The IRS has not raised any issues with the form and content of the Martins' Form 1040s; the IRS only takes issue with the timing of the Form 1040s' filing in relation to the assessments and collection activity.[10]

**ANALYSIS AND CONCLUSIONS OF LAW.**

**The Chapter 7 Discharge.** Generally, and with few exceptions, a chapter 7 debtor will receive a discharge of all debts that arose before the petition date. *See* § 727(b). Section 523 of the Bankruptcy Code defines the kinds of debts that are excepted from the discharge. When a dispute arises, these exceptions to discharge should be strictly construed against the creditor in light of the "fresh start" policy

[10] Indeed, the IRS accepted the Form 1040s and processed them to determine the amount of the tax debt, just as if they had been timely filed. As a result, the IRS only seeks relief for the adjusted amount of assessed taxes due after the Form 1040s were filed. The IRS concedes that the post-assessment increase for the 2005 tax liability, along with all interest and penalties, was discharged.

underlying the Code. *See Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992).

The discharge exception applicable here is found in § 523(a)(1)(B)(i).[11] It applies to a tax debt "with respect to which a return . . . if required . . . was not filed or given." In other words, a debtor cannot discharge "a tax liability debt if: (1) the tax underlying the tax liability debt required a return; and (2) the debtor failed to file the required return." *Cal. Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1050 (9th Cir. 1999). In cases involving § 523(a)(1)(B)(i), when the debtor has filed a Form 1040 or other document which purports to report his or her tax liability, the focus shifts to the question of what constitutes a filed "return," with "[t]he IRS [having] the ultimate burden of proof as to whether a return has been filed," *United States v. Nunez (In re Nunez)*, 232 B.R. 778, 783 (9th Cir. BAP 1999).

---

[11] In its entirety, § 523(a)(1)(B) identifies two categories of tax debts which are excepted from discharge:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax or a customs duty—
>
> . . .
>
> (B) with respect to which a return, or equivalent report or notice, if required—
>
> (i) was not filed or given; or
>
> (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition . . . .

Here, it is undisputed that the Martins filed their Form 1040s for the tax years 2004, 2005, and 2006 more than two years before their bankruptcy. Therefore, the discharge exception in § 523(a)(1)(B)(ii) is not applicable in this case.

**The Definition of a Tax "Return": the *Beard* Test.** Prior to enactment of the BAPCPA in 2005, the term "return" was undefined by the Bankruptcy Code. As a result, many courts, including the Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), adopted the four-element test developed by the tax court in *Beard v. Commissioner*, 82 T.C. 766 (1984), *aff'd per curiam*, 793 F.2d 139 (6th Cir. 1986), to determine what constitutes a tax "return" for purposes of § 523(a)(1)(B). *See United States v. Hatton (In re Hatton)*, 220 F.3d 1057, 1060–61 (9th Cir. 2000); *Colsen v. United States (In re Colsen)*, 446 F.3d 836, 839 (8th Cir. 2006); *In re Payne*, 431 F.3d 1055, 1057 (7th Cir. 2005); *Moroney v. United States (In re Moroney)*, 352 F.3d 902, 905 (4th Cir. 2003); *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1033–34 (6th Cir. 1999).

Relying on Supreme Court precedent, the tax court in *Beard* set forth the requirements for a valid tax return (the "*Beard* Test"). *See* 82 T.C. at 777–78 (citing *Badaracco v. Comm'r*, 464 U.S. 386 (1984); *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172 (1934); *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453 (1930)). Under the *Beard* Test, a document submitted to the IRS by a taxpayer qualifies as a return if it (1) purports to be a return; (2) is executed under penalty of perjury; (3) contains sufficient data to calculate the tax liability; and (4) represents an honest and reasonable attempt to satisfy the requirements of the tax law. *See id.* at 777.

In pre-BAPCPA nondischargeability cases, the dispute generally focused on the fourth *Beard* Test element,[12] and the courts tended to disagree on whether this "honest-and-reasonable-attempt" inquiry incorporates the debtor's delinquency (i.e., whether the tax return was untimely filed and the reasons for its untimeliness) or is limited to the face of the purported return (i.e., the form and content of the documents filed). *Compare Colsen*, 446 F.3d at 840 (considering face of the documents only), *and Payne*, 431 F.3d

---

[12] Here, there is no dispute that the Martins' Form 1040s satisfy the first three elements of the *Beard* Test.

at 1061–62 (Easterbrook, J., dissenting), *with Payne*, 431 F.3d at 1057–58 (majority opinion) (considering timeliness of the return), *Moroney*, 352 F.3d at 906, *and Hindenlang*, 164 F.3d at 1034–35.

With enactment of the BAPCPA in 2005, Congress attempted to clarify the meaning of the term "return" by adding a "hanging paragraph" to the end of § 523(a). *See* BAPCPA, Pub. L. No. 109-8, § 714, 119 Stat. at 128–29. This hanging paragraph reads,

> For purposes of this subsection, the term "return" means a return that *satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)*. Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

§ 523(a) para. (emphasis added).

Unfortunately, Congress's attempt to bring clarity to the process has only created more ambiguity, resulting in significant disagreement between the courts which have endeavored to apply the new law. Some courts have interpreted the BAPCPA's addition of the hanging paragraph to mean the end of the *Beard* Test. *See McCoy v. Miss. State Tax Comm'n (In re McCoy)*, 666 F.3d 924, 929–30 (5th Cir. 2012) ("BAPCPA amended § 523(a) to provide an unambiguous definition of 'return,' obviating the need to return to the pre-BAPCPA [*Beard*] test."); *Gonzalez v. Mass. Dep't of Revenue (In re Gonzalez)*, __ B.R. __, BAP No. MW 13-026, 2014 WL 888460, at *7 (1st Cir. BAP Mar. 6, 2014); *Casano v. IRS (In re Casano)*, 473 B.R. 504, 507 (Bankr. E.D.N.Y. 2012); *Creekmore v. IRS (In re Creekmore)*, 401 B.R. 748, 751–52 (Bankr. N.D. Miss. 2008); *see also Payne*, 431 F.3d at 1060 (Easterbrook, J., dissenting). However, other courts have continued to apply the tax court's *Beard* Test, believing it represents the "applicable nonbankruptcy law" referred to in the hanging paragraph. *See Mallo v. United States (In re Mallo)*, 498 B.R. 268, 281 (D. Colo. 2013) (adopting *Hindenlang* version of *Beard* Test as the "applicable nonbankruptcy law"); *Rhodes v. United States (In re Rhodes)*, 498 B.R. 357,

369 (Bankr. N.D. Ga. 2013) (adopting *Colsen* version of *Beard* Test); *Brown v. Mass. Dep't of Revenue (In re Brown)*, 489 B.R. 1, 5–6 (Bankr. D. Mass. 2013), *aff'd on other grounds sub nom. Gonzalez*, 2014 WL 888460. Still, others have declined to take a position on the *Beard* Test's post-BAPCPA relevance. *See Wogoman v. IRS (In re Wogoman)*, 475 B.R. 239, 250–51 (10th Cir. BAP 2012) (concluding that tax debt was nondischargeable whether using *Beard* Test or other tests); *Perry v. United States*, 500 B.R. 796, 803 (M.D. Ala. 2013); *Smythe v. United States (In re Smythe)*, Case No. 10-49799, Adv. No. 11-04077, 2012 WL 843435, at *4 (Bankr. W.D. Wash. Mar. 12, 2012).

**The Tax "Debt" Is Not Established by the IRS's Assessments.** Leaving the *Beard* Test aside for a moment, the IRS first argues that the Martins' tax debt is nondischargeable under § 523(a)(1)(B)(i) because the underlying "debt" is established by the IRS's assessments, rather than the Form 1040s that the Martins filed subsequently. The IRS attempts to force a distinction between a tax liability based on an assessment and a tax liability based on a subsequently filed document, in this case, a Form 1040. According to the IRS, it does not matter if a debtor files a Form 1040 after the IRS's assessment has been made because the assessment has already created a legally enforceable "debt" that carries the force of a judgment. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("[T]he assessment is the official recording of liability that triggers levy and collection efforts."); *Bull v. United States*, 295 U.S. 247, 260 (1935) ("The assessment supersedes the pleading, proof, and judgment necessary in an action of law, and has the force of such a judgment."). If the court follows the IRS's argument here, then there would be no need to determine whether a post-assessment Form 1040 qualifies as a "return" within the meaning of § 523(a)(1)(B) and the hanging paragraph. The subsequently filed Form 1040 would be irrelevant because the "assessed debt" would independently constitute a tax debt "with respect to which a return . . . was not filed or given." § 523(a)(1)(B)(i).

However, the IRS's argument is unpersuasive and will not be adopted by this court. The IRS has not cited any binding authority for this interpretation of the

Bankruptcy Code, and the court has only found two decisions, both unpublished, that seem to agree with the IRS. *See Smythe*, 2012 WL 843435, at *2–3; *Wogoman v. IRS (In re Wogoman)*, Case No. 11-11044-SBB, Adv. No. 11-01117-SBB, 2011 WL 3652281, at *5 (Bankr. D. Colo. Aug. 19, 2011), *aff'd on other grounds*, 475 B.R. 239. Conversely, a number of courts have disagreed with the IRS on this issue under nearly identical facts. *See Martin v. United States (In re Martin)*, 500 B.R. 1, 7–8 (D. Colo. 2013); *Mallo*, 498 B.R. at 277; *Rhodes*, 498 B.R. at 362; *see also Savage v. IRS (In re Savage)*, 218 B.R. 126, 132 (10th Cir. BAP 1998) (pre-BAPCPA). The bankruptcy court in *Rhodes* succinctly disposed of the IRS's argument:

> The statutory definitions of "debt" and "claim" focus on the nature and source of the debt (federal income tax liability), not the mechanism to determine the debt (assessment versus return). Under these definitions, a debtor has a "debt" when a right to payment accrues, regardless of how or when the extent of the debtor's liability becomes fixed or due.
>
> At the end of each [taxable year], the United States had a *right to payment* of income tax for [the] year (although unmatured and unfixed), and the Debtor was liable for the tax at the time. Thus, the Debtor had a *debt* that existed regardless of the Debtor's filing of the return or the IRS's assessment. The distinction between assessment and return is not relevant to the existence of a "debt" for bankruptcy purposes or to the dischargeability inquiry under § 523(a)(1)(B).

498 B.R. at 362 (emphasis in original); *cf. Edelson v. Comm'r*, 829 F.2d 828, 834 (9th Cir. 1987) ("[T]ax liabilities, though unassessed, are deemed obligations due and owing at the close of the taxable year."). The court finds this analysis in *Rhodes* to be persuasive, and the IRS's first argument must therefore be rejected.

**Interpretation of the Hanging Paragraph.** Turning to the IRS's alternative argument, the court now shifts its attention to § 523(a)'s hanging paragraph to determine what falls within the "requirements of applicable nonbankruptcy law (including applicable filing requirements)." Specifically, in this case, the court must decide if and how the timing of the filing of the Martins' Form 1040s affects their qualification as "returns" for dischargeability purposes. In other words, is the timing of a Form 1040's filing an "applicable filing requirement" within the meaning of the hanging paragraph?

Again, the courts are split in their response to this question, and three approaches have emerged. First, the Court of Appeals for the Fifth Circuit (the "Fifth Circuit") has adopted a rigid, unforgiving interpretation in *McCoy* (hereinafter referred to as the "one-day-late" result), with most courts following *McCoy* and its bright-line test. *See Pendergast v. Mass. Dep't of Revenue (In re Pendergast)*, 494 B.R. 8, 14–15 (Bankr. D. Mass. 2013); *Shinn v. IRS (In re Shinn)*, Bankr. No. 10-83750, Adv. No. 10-8139, 2012 WL 986752, at *6 (Bankr. C.D. Ill. Mar. 22, 2012); *Hernandez v. United States (In re Hernandez)*, Bankr. No. 10-53962-C, Adv. No. 11-5126-C, 2012 WL 78668, at *3 (Bankr. W.D. Tex. Jan. 11, 2012); *Cannon v. United States (In re Cannon)*, 451 B.R. 204, 206 (Bankr. N.D. Ga. 2011); *Links v. United States (In re Links)*, Bankr. No. 07-31728, Adv. No. 08-3178, 2009 WL 2966162, at *5 (Bankr. N.D. Ohio Aug. 21, 2009); *Creekmore*, 401 B.R. at 751–52.

Conversely, some courts have adopted the Court of Appeals for the Sixth Circuit's (the "Sixth Circuit") pre-BAPCPA approach in *Hindenlang*, which judicially constructed a more flexible, but seemingly arbitrary answer to this question (hereinafter referred to as the "post-assessment" approach). *See Martin*, 500 B.R. at 8; *Mallo*, 498 B.R. at 280–81; *see also Wogoman*, 475 B.R. at 251; *Perry*, 500 B.R. at 810. Lastly, the minority view, relying on the Court of Appeals for the Eight Circuit's (the "Eighth Circuit") pre-BAPCPA decision in *Colsen*, holds that the hanging paragraph's reference to "requirements of applicable nonbankruptcy law (including applicable filing requirements)" does not impose any temporal restriction on the definition of a tax return for dischargeability purposes (hereinafter referred to as the "no-time-limit" interpretation). *See Rhodes*, 498 B.R. at 369; *Martin v. United States (In re Martin)*, 482 B.R. 635, 640–41 (Bankr. D. Colo. 2012), *rev'd*, 500 B.R. 1.

For the reasons set forth below, this court declines to adopt either the one-day-late result or the post-assessment approach and will instead apply the minority no-time-limit interpretation to the hanging paragraph.

**The Fifth Circuit's One-Day-Late Result.** In *McCoy*, the Fifth Circuit applied a literal and seemingly harsh interpretation of the hanging paragraph by holding that, with certain limited exceptions, a "return that is filed late under the applicable nonbankruptcy . . . law is not a 'return' for bankruptcy discharge purposes under § 523(a)." 666 F.3d at 932.

The Fifth Circuit's analysis looked strictly at the plain language of the first sentence of the BAPCPA's hanging paragraph. *See id.* at 928–29 (emphasizing that "the plain language meaning of the [Bankruptcy] Code should rarely be trumped" even if "awkward" or "ungrammatical" (alteration in original) (internal quotation marks omitted)). Under the *McCoy* interpretation, the statutory due date for filing a tax return represents one of the "applicable filing requirements" referred to in the first sentence. *See id.* at 928. For federal income taxes, a tax return must be filed, unless an extension has been granted,[13] "on or before the 15th day of April following the close of the calendar year." IRC § 6072(a). As a result, a court following the *McCoy* analysis would hold that debtors who file their own tax returns on April 16, as little as one day after the statutory due date, would be unable to discharge their tax debt in bankruptcy because one-day-late returns do not literally satisfy "applicable filing requirements." *See, e.g.*, *Creekmore*, 401 B.R. at 752 (noting that debtor did not file returns by April 15 deadline).

Although some courts adopting this strict interpretation have acknowledged its potentially harsh results, they reasoned that the plain language of the statute should nevertheless control. *See Pendergast*, 494 B.R. at 14 ("While I recognize that there is something unsavory about saying that a 'late-filed return' is not a 'return' under 11 U.S.C. § 523(a) by virtue of its tardiness, I cannot characterize this result as absurd."). Yet, as other courts have pointed out, the *McCoy* analysis runs afoul of several other canons of statutory construction that should trump the apparent plain language of the

---

[13] If the IRS grants an extension, that filing deadline would typically be extended another six months. *See* IRC § 6081(a).

statute. *See Wogoman*, 475 B.R. at 248–49; *Brown*, 489 B.R. at 5, *aff'd on other grounds sub nom. Gonzalez*, 2014 WL 888460; *Martin*, 482 B.R. at 639, *rev'd*, 500 B.R. 1. Even the IRS has expressed its own lack of support for the Fifth Circuit's one-day-late interpretation.[14]

First, it is difficult, if not impossible, to harmonize the one-day-late interpretation with the hanging paragraph's second sentence. *See Wogoman*, 475 B.R. at 248–49. The one-day-late result requires reading the hanging paragraph's first sentence in isolation and without regard to the second sentence. *See id.* at 248 ("Each of the two sentences in this paragraph appears quite straightforward when standing alone. However, when the two are read together, we are not convinced, as some other courts are, that the precise meaning and effect of the hanging paragraph is clear."). But as the Supreme Court has instructed, "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation marks omitted); *accord Hibbs*, 542 U.S. at 101. Further, "one provision should not be interpreted in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) (internal quotation marks omitted).

Here, if the first sentence of the hanging paragraph is construed to support the one-day-late result (i.e., excluding any late-filed document from the definition of a "return"), then that interpretation is internally inconsistent with the second sentence's reference to an IRC § 6020(a) return, and it also renders the second sentence's reference to an IRC § 6020(b) return meaningless. This is because returns filed pursuant to both

---

[14] The IRS candidly disclosed its reluctance to advocate for the one-day-late result, stating, "The United States does not adopt this position, which creates a harsh result that appears inconsistent with the statute's intent." Def.'s Mem. Supp. Summ. J. 12:20–21, July 30, 2013, ECF No. 47.

IRC §§ 6020(a) and 6020(b) are necessarily "late" returns. The IRS would not even prepare these "substitute" returns until some time after the taxpayer has failed to timely file his or her own return (i.e., once the April 15 statutory deadline has passed). *See* IRC § 6020(a), (b)(1); I.R.S. Chief Couns. Notice CC-2010-016, 2010 WL 3617597 (Sept. 2, 2010) (noting that an IRC § 6020(b) return "is always prepared after the due date"); *see also McCoy*, 666 F.3d at 931 (acknowledging that "filings under § 6020 of the Internal Revenue Code are not returns that satisfy 'applicable filing requirements'").

Thus, it is contradictory to impose *McCoy*'s strict temporal condition in the definition of "return," while including a necessarily late IRC § 6020(a) return as one of those "returns."[15] By the same logic, there is also no need for the hanging paragraph to specifically exclude a necessarily late IRC § 6020(b) return if the general definition of "return" in the first sentence already excludes all late-filed returns.[16] Conversely, if the first sentence of the hanging paragraph is interpreted to *not* impose a temporal condition in the definition of a tax return, then the first and second sentences of the hanging paragraph can be read in harmony with one another. The hanging paragraph would be internally consistent, and neither sentence would render the other meaningless. *See Bayview Hunters Point*, 366 F.3d at 700.

---

[15] In response, those courts adopting the one-day-late result have reasoned, without much analysis, that the reference to an IRC § 6020(a) return is intended to represent a very narrow exception or safe harbor to the general definition of a "return" found in the first sentence. *See McCoy*, 666 F.3d at 931; *Pendergast*, 494 B.R. at 15; *Creekmore*, 401 B.R. at 752. But, as one court has observed, "[N]either the Fifth Circuit's decision, nor the bankruptcy court decisions it cites, offer a satisfactory explanation for why Congress allegedly 'carves out a narrow exception to the definition of 'return' for § 6020(a) returns.'" *Wogoman*, 475 B.R. at 249.

[16] Further, the reference to an IRC § 6020(b) return in the hanging paragraph is superfluous since an IRC § 6020(b) return is not a "return" for statute-of-limitations purposes under "applicable nonbankruptcy law." *See* IRC § 6501(b)(3) ("Notwithstanding the provisions of paragraph (2) of section 6020(b), the execution of a return by the Secretary pursuant to the authority conferred by such section shall not start the running of the period of limitations on assessment and collection.").

Additionally, Congress has already addressed the "time-of-filing" question in another manner, which further supports the conclusion that timely filing is not a "requirement" in the hanging paragraph. Specifically, the Bankruptcy Code deals with a late-filed return in § 523(a)(1)(B)(ii), and *McCoy's* one-day-late interpretation would render that subsection meaningless as well. *See Rhodes*, 498 B.R. at 366. Pursuant to § 523(a)(1)(B)(ii), a tax debt is not discharged if a return was filed after its due date (i.e., it was untimely) and within two years prior to the bankruptcy filing.[17] For the purposes of defining that "return," the definition in the hanging paragraph applies to both subsections (i) and (ii) of § 523(a)(1)(B). *Cf. Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (stating "the normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning" (internal quotation marks omitted)). However, if the hanging paragraph is interpreted to make timely filing a requirement in the definition of a tax return, thus excluding all returns that are not filed on time, then a creditor has no need to ever resort to the two-year rule long recognized in § 523(a)(1)(B)(ii), given that § 523(a)(1)(B)(i) would suffice to disqualify all untimely returns.[18] *See Rhodes*, 498 B.R. at 366 ("Thus, if timeliness is part of 'applicable filing requirements' . . . , a late-filed return is not a 'return' for clause (ii) of § 523(a)(1)(B) either.").

---

[17] Specifically, that provision states that a tax debt "with respect to which a return . . . if required . . . was filed or given after the date on which such return . . . was last due, under applicable law or under any extension, and after two years before the [petition date]" is not discharged.

[18] In response to this argument, one court has suggested that an IRC § 6020(a) return may qualify as a late-filed return under § 523(a)(1)(B)(ii), meaning that subsection would not be rendered meaningless by the one-day-late interpretation. *See Pendergast*, 494 B.R. at 15 & n.33. However, an IRC § 6020(a) return can never be a return "filed . . . after the date on which such return . . . was last due, under applicable law or under any extension" because an IRC § 6020(a) return has no filing deadline and is filed in the IRS's discretion. *See* IRC § 6020(a); *see also* IRC § 6072(a). Thus, § 523(a)(1)(B)(ii) would not apply to a late-filed IRC § 6020(a) return.

Lastly, the court must also consider the argument that the one-day-late interpretation of the hanging paragraph yields a potentially absurd result. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks omitted)); *Crooks v. Harrelson*, 282 U.S. 55, 60 (1930) ("[T]o justify a departure from the letter of the law upon that ground, the absurdity must be so gross as to shock the general moral or common sense."). Even the IRS acknowledges that it would be "a harsh result that appears inconsistent with the statute's intent" to except tax debts from discharge when debtors have filed their tax returns as little as one day after the applicable deadline,[19] which is why the IRS has expressly declined, in this case and many others, to urge adoption of the one-day-late result espoused in *McCoy* and its progeny. In so doing, the IRS has implicitly conceded that timely filing (i.e. by April 15) is not a "requirement" for a tax return under applicable nonbankruptcy law.

In conclusion, because the one-day-late interpretation would (1) make it impossible to read the first and second sentences of the hanging paragraph in harmony, (2) render § 523(a)(1)(B)(ii) superfluous, and (3) produce a potentially absurd result, this court declines to adopt the one-day-late interpretation of the hanging paragraph and concludes that timely filing is not a "requirement" for determining what constitutes a tax "return" for dischargeability purposes.

**The Sixth Circuit's Post-Assessment Approach.** The court turns now to the post-assessment approach originating from the Sixth Circuit's pre-BAPCPA decision in *Hindenlang* applying the *Beard* Test. It stands for the proposition that a late-filed tax return can still constitute a "return" within the meaning of § 523(a)(1)(B) and the hanging paragraph *up until* the time the IRS makes an assessment and commences collection efforts for that tax year. Immediately after the IRS makes its assessment, then

---

[19] Def.'s Mem. Supp. Summ. J. 12:20–21, July 30, 2013, ECF No. 47.

as a matter of law any document the debtor may file, including, as here, the official Form 1040, loses its identity as a tax return for dischargeability purposes, even though it may be accepted by the IRS and processed for all other purposes for which a tax return is required. *See Mallo*, 498 B.R. at 281 (concluding that "untimely returns filed by Debtors in this case after the IRS determined their tax liability negates 'an honest and reasonable attempt to comply with tax law' under the fourth prong of the [*Beard*] test"); *see also Hindenlang*, 164 F.3d at 1034–35.

The biggest problem with the post-assessment approach for defining what constitutes a tax return is that it is a judicially constructed fiction that lacks any support in the "applicable nonbankruptcy law" (i.e., the relevant tax statutes, regulations, and case law). Further, it puts the IRS in complete control of the issue of timeliness and the ultimate result of nondischargeability. To simply tie the definition of a tax return to the timing of the IRS's assessment would yield totally arbitrary and potentially unconscionable results.

The post-assessment approach forces us to revisit the initial question asked by the court: does "applicable nonbankruptcy law" referred to in § 523(a)'s hanging paragraph contemplate that timely filing is a "requirement" in the definition of a tax return, or does it not? The answer can be "yes" only if relevant tax statutes, regulations, or case law provides for such a requirement. Courts adopting the one-day-late result answer with a "yes," citing to tax statutes such as IRC § 6072(a) as support for the temporal requirement. However, the court has already explained the difficulty with application of the one-day-late result above, so *McCoy*'s strict temporal rule does not work.

The IRS disagrees with *McCoy*'s one-day-late result but still argues that the answer to the court's question is "yes" based on a different theory, the post-assessment approach. However, where is the support from "applicable *nonbankruptcy* law" for such a requirement that a return must be filed before the IRS makes its assessment? In response, the IRS offers *Hindenlang* and the cases following it as support. Yet, while the court agrees that the *Beard* Test in its basic form may represent a part of the

"applicable nonbankruptcy law" referenced in the hanging paragraph,[20] the IRS's supporting authority, *Hindenlang* and its progeny, is better characterized as "applicable *bankruptcy* law." The IRS has not cited to any cases adopting the post-assessment approach in a nonbankruptcy tax context. Thus, *Hindenlang*'s judicially constructed rule also does not work, and without another temporal-requirement option supported by "applicable nonbankruptcy law," the answer to the court's initial question must be "no."

Additionally, in light of the policy to strictly construe dischargeability exceptions against the creditor, *see Riso*, 978 F.2d at 1154, the court declines to adopt a definition of "return" that essentially puts the dischargeability "trigger" entirely in the hands of the creditor. Although the post-assessment approach focuses on one particular date to determine whether a return has been filed (i.e., when the IRS makes an assessment), that date is a moving target that is ultimately controlled by the IRS. Other than the statutory restriction in IRC § 6213(a), which compels the IRS to wait 90 days after mailing the deficiency notice before making its assessment, the IRS appears to have unfettered discretion in deciding when to initiate the assessment process (once those 90 days have run). With this discretion, the IRS could potentially mail a deficiency notice to a debtor, who did not file his or her tax return by the April 15 due date, on the next day, April 16, and proceed to assess the debtor's tax liability on the 91st day after that. Under the post-assessment approach, the tax debt would hypothetically become nondischargeable even if the debtor otherwise made a reasonable attempt to file his or her return 92 days after

---

[20] The *Beard* Test in general has remained a widely accepted authority for determining what constitutes a "return" in a variety of tax contexts. The IRS has referenced the *Beard* Test in its revenue rulings and other materials. *See* Rev. Rul. 2005-59, 2005-2 C.B. 505 (2005) (clarifying when documents constitute valid returns under *Beard* Test in context of joint filers); I.R.S. Chief Couns. Notice CC-2004-032, 2004 WL 3210764 (Sept. 9, 2004) ("The four part test set forth in [*Beard*] is widely accepted as the analysis for determining what constitutes a return for purposes of the Internal Revenue Code."). Courts facing tax issues have also applied the test. *See Mendes v. Comm'r*, 121 T.C. 308, 329–30 (2003) (Vasquez, J., concurring) (noting that courts have relied on the *Beard* Test for a number of provisions in the Internal Revenue Code).

the April 15 due date, but one day after the IRS has made its assessment. At the same time, a return filed years after its due date, as had occurred here, would be treated as a return for dischargeability purposes so long as the IRS has not yet made its assessment. The post-assessment approach is simply too arbitrary in its application and grants too much power to the IRS to control the timing of the dischargeability issue.

For these reasons, the court cannot adopt the post-assessment approach as support for the proposition that the time of filing is a "requirement" in the hanging paragraph's definition of a tax return for dischargeability purposes.

**The No-Time-Limit Minority View.** After careful consideration of the arguments for and against the various solutions to this problem, the court is persuaded that the most reasonable and consistent interpretation of the hanging paragraph comes from the minority no-time-limit approach, derived from the Eighth Circuit's pre-BAPCPA decision in *Colsen* also applying the *Beard* Test. As mentioned above, the court agrees that the tax court's *Beard* Test can be considered as part of the "applicable nonbankruptcy law" referenced in the hanging paragraph and rejects *McCoy*'s conclusion that the BAPCPA eliminated the need to rely on the *Beard* Test. However, in deciding which version of the *Beard* Test to apply, the court must side with *Colsen* over *Hindenlang*. *Colsen*'s observation—that "the fourth *Beard* criterion contains no mention of timeliness," 446 F.3d at 840—represents the better analysis of the original *Beard* Test that more closely follows the actual "requirements of applicable nonbankruptcy law (including applicable filing requirements)" that make a return a "return." *See Rhodes*, 498 B.R. at 369 ("This approach is consistent with [*Beard*], the case from which the four-prong test originates.").

In *Colsen*, the Eighth Circuit acknowledged the post-assessment approach taken in *Hindenlang* but declined to follow it or impose any temporal condition in the definition of a tax "return" for dischargeability purposes. *See Colsen*, 446 F.3d at 839–40. The court noted that the *Beard* Test's requirement of an "honest and genuine attempt to satisfy the [tax] laws" related to the form and substance of the documents

filed, not to the time of their filing. *See id.* at 840 (citing *Badaracco*, 464 U.S. at 396–97 (observing that fraudulent returns can still be returns for statute-of-limitations purposes if they "appeared on their faces to constitute endeavors to satisfy the law")). The court observed,

> [T]he fourth *Beard* criterion contains no mention of timeliness or the filer's intent. We have been offered no persuasive reason to create a more subjective definition of "return" that is dependent on the facts and circumstances of a taxpayer's filing. We think that to do so would increase the difficulty of administration and introduce an inconsistency into the terminology of the tax laws. We therefore hold that the honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the filer's delinquency or the reason for it. The filer's subjective intent is irrelevant.

*Id.* Thus, although the *Beard* Test does represent "applicable nonbankruptcy law" referred to in the hanging paragraph, "[that] requirement that the return 'must represent an honest and reasonable attempt to satisfy the requirements of the tax law' does not incorporate a timeliness requirement." *Rhodes*, 498 B.R. at 369. As a result, the court need not consider the fact that the Martins filed their Form 1040s after the IRS made its assessments in the § 523(a)(1)(B)(i) analysis.

Although the IRS opposes *Colsen*'s no-time-limit interpretation, it has not identified any "applicable nonbankruptcy law" that requires a return to be filed by a certain time in order to qualify as a "return." *See Hindenlang*, 164 F.3d at 1033 (acknowledging that the Internal Revenue Code "does not specify when a late tax form will no longer qualify as a return under the tax law"). As discussed in *Colsen*, such a temporal filing requirement does not actually exist within the fourth element of the original *Beard* Test, *see id.* at 840, so the IRS cannot rely on *Hindenlang* and its progeny. Additionally, the IRS has not cited any other tax statutes, regulations, or case law that otherwise indicates a temporal requirement for filing returns.

The only temporal consideration that this court could locate in the tax law is the April 15 filing deadline under IRC § 6072(a). However, unlike other requirements imposed by applicable tax law, a taxpayer's failure to timely file a return by this statutory

deadline does not defeat the purpose of the return or render it a nullity;[21] the late filing is simply grounds to impose additional penalties and interest on the taxpayer. *See* IRC § 6651(a)(1). A return filed on April 16 is still accepted as a return by the IRS. Furthermore, courts, including the Supreme Court, have recognized that perfect compliance with the applicable tax law in certain situations—more significant than filing a return late—is not required for a return to be deemed valid. *See Zellerbach Paper*, 293 U.S. at 180 ("Perfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law. This is so though at the time of filing the omissions or inaccuracies are such as to make amendment necessary." (citation omitted)); *Sakkis v. Comm'r*, 100 T.C.M. (CCH) 459, at *7–8 (2010) (finding that valid return was filed even though taxpayers claimed frivolous deduction that brought their tax liability down to zero).

Additionally, despite the supposed "requirement" that a tax return be filed before the IRS makes its assessment, the IRS's own actions suggest that this is not actually a "requirement" within the meaning of the hanging paragraph after all. A "requirement" means "something essential to the existence or occurrence of something else." Webster's New Explorer Encyclopedic Dictionary 1561 (Federal Street Press 2006). Thus, to give meaning to the statutory term "requirements" in the hanging paragraph, a document should be considered a "return that satisfies the requirements of applicable nonbankruptcy law" *only if* the document meets all—not some—of the requirements to becoming a return.

---

[21] For example, a purported return, which has not been signed under penalty of perjury as required by IRC §§ 6061 and 6065, is deemed an invalid return. *See Olpin v. Comm'r*, 270 F.3d 1297, 1300–01 (10th Cir. 2001); *United States v. Lee (In re Lee)*, 186 B.R. 539, 541 (S.D. Fla. 1995) (noting that the tax courts "have consistently held that an unsigned tax return is no return at all").

Here, notwithstanding this supposed temporal "requirement" and the Martins' failure to comply with it, the IRS nevertheless accepted and recognized the Martins' Form 1040s as legitimate "returns" when it increased the assessed tax liability for 2005 and partially abated the tax liability for 2004 and 2006. *See* IRC § 6201(a)(1) (requiring the IRS to "assess all taxes determined by the taxpayer or by the [IRS] as to which *returns* or lists are made under this title" (emphasis added)); IRC § 6404(b) (providing that a taxpayer is not entitled to file a "claim for abatement"); *see also Colsen*, 446 F.3d at 840–41 (noting that the "information contained in the [debtor's Form 1040s] was honest and genuine enough to result in thousands of dollars of abatements of tax and interest" and that the "IRS apparently ha[d] found [the] post-assessment returns useful"). By accepting and processing the Martins' Form 1040s, the IRS effectively acknowledged that those documents did not have to be filed before the assessments in order for the documents to become a legally sufficient tax returns for tax purposes. Otherwise, the Martins' post-assessment Form 1040s should have been rejected by the IRS as legal nullities. *See, e.g.*, Treas. Reg. § 1.6011-1(b) (providing that if a taxpayer does not "carefully prepare his return and set forth fully and clearly the information required to be included therein," then that return "will not be accepted as meeting the requirements of the [Internal Revenue] Code" by the IRS). The IRS cannot pick and choose which considerations, such as the time of a tax return's filing, will count as a "requirement" under different circumstances. Since the hanging paragraph specifically adopts "applicable nonbankruptcy law," a "return" for tax purposes should also be a "return" for bankruptcy purposes.

Given that (1) "applicable nonbankruptcy law" does not exclude a late-filed tax reporting document from being accepted and processed as a "return" for tax purposes, and that (2) the IRS in this case did, in fact, accept the Martins' late-filed Form 1040s and adjusted their tax liability accordingly, the court concludes that filing a tax return before the IRS's assessment is not one of the "requirements of applicable nonbankruptcy law (including applicable filing requirements)" under the hanging paragraph. The no-

time-limit interpretation must be adopted because it appears to be the only result that is consistent with applicable tax law and actual tax practice.

**Applicability of the *Hatton* Decision.** Before concluding, the court will address the IRS's offer to follow the Ninth Circuit's pre-BAPCPA decision in *Hatton*.[22] In *Hatton*, the bankruptcy court had ruled by summary judgment that the debtor's tax liability was dischargeable, and the bankruptcy appellate panel affirmed that decision. 220 F.3d at 1058. The Ninth Circuit, however, in applying the *Beard* Test, reasoned that the debtor had not filed a "return" within the meaning of § 523(a)(1)(B)(i). *Id.* at 1061. Accordingly, the circuit court reversed the lower courts and concluded that the subject tax was not discharged. *Id.* Although the *Hatton* decision may be binding authority on this court where applicable, it is distinguishable by both its timing and its facts and does not clearly address the time-of-filing issue now before this court. *See Hart v. Massanari*, 266 F.3d 1155, 1170–73 (9th Cir. 2001) ("[A] court confronted with apparently controlling authority must parse the precedent in light of the facts presented and the rule announced.").

In *Hatton*, the debtor never filed a Form 1040 for his 1983 federal income tax. 220 F.3d at 1059. Instead, the IRS had to prepare a substitute return, with no help from the debtor, pursuant to IRC § 6020(b). *Id.* The debtor never disputed the IRS's calculation of the tax and, after months of delay, finally entered into an installment agreement with the IRS to pay the tax at the rate of $200 per month. *Id.* He subsequently filed a chapter 7 petition before the tax was fully paid and sought a determination that the remainder of the debt was discharged. *Id.*

Looking at the four elements of the *Beard* Test, the Ninth Circuit concluded that neither the IRC § 6020(b) return nor the installment agreement constituted a tax return, as a matter of law, within the meaning of § 523(a)(1)(B)(i). *Id.* at 1061. Looking at the

---

[22] Specifically, the IRS has argued that "*Colsen* is inconsistent with the Ninth Circuit's treatment of this issue in [*Hatton*] and should not be followed." Def.'s Mem. Supp. Summ. J. 15:12–13, July 30, 2013, ECF No. 47.

form and content of the documents, the court was able to dispose of the issue based on the second element of the *Beard* Test, which required purported returns be executed under penalty of perjury:

> The installment agreement and the substitute return fail to qualify as a return under *Beard*. First, neither document was signed under the penalty of perjury. The substitute return was never signed by [the debtor], and although the installment agreement contains [the debtor's] signature, his signature was not provided under the penalty of perjury. Therefore, under *Beard*, [the debtor] failed to file a tax return.

*Id.* (citation omitted).

After concluding that the debtor had "failed to file a tax return" under the second *Beard* Test element, the court went on to address the fourth element. *Id.* It concluded that the IRC § 6020(b) return and the installment agreement, documents prepared by the IRS, also did not "represent an honest and reasonable attempt [by the debtor] to satisfy the requirements of the law." *Id.* The Ninth Circuit explained,

> It is undisputed that [the debtor] failed to file a federal tax return on his own initiative for the 1983 tax year as required by section 6012 of the I.R.C. It is also undisputed that [the debtor] never attempted to cure this failure until after the IRS had assessed his tax deficiency and initiated a delinquency investigation. It was only after the IRS threatened to levy his wages and bank account and seize his personal property that [the debtor] elected to cooperate with the IRS. Moreover, even after [the debtor] finally responded to the notices sent by the IRS, it still took months of negotiations before the IRS and [the debtor] could agree on a settlement that ultimately resulted in the installment agreement.
>
> . . . [The debtor's] belated acceptance of responsibility, however, does not constitute an honest and reasonable attempt to comply with the requirements of the tax law. Instead, [the debtor] made every attempt to avoid paying his taxes until the IRS left him with no other choice. Because [the debtor] never filed a return and only cooperated with the IRS once collection became inevitable, the bankruptcy court erred in concluding that section 523 did not except [the debtor's] tax liability from discharge.

*Id.* (citation omitted).

Relying on the Ninth Circuit's discussion of the fourth *Beard* Test element, the IRS essentially argues that this circuit has adopted the Sixth Circuit's post-assessment approach discussed above. However, for several reasons, this court is not persuaded that

the Ninth Circuit went so far as to decree a *per se* rule that a document must be filed before the IRS's assessment to be considered a return for dischargeability purposes.

First, the *Hatton* decision came before the BAPCPA's introduction of the hanging paragraph, so the Ninth Circuit was not called to determine whether the time of filing a return is a "requirement[ ] of applicable nonbankruptcy law." The circuit court was simply considering the facts before it, and those facts did not include a debtor filing a Form 1040 after the IRS had made its assessment. Further, there is no indication that the Ninth Circuit intended to go beyond its facts and broadly hold that all efforts by a debtor to satisfy the tax laws once the IRS begins its assessment, such as by filing his or her own return, would never be considered honest and reasonable as a matter of law. Thus, *Hatton* cannot be construed as proclaiming a *per se* post-assessment rule.

Second, the Ninth Circuit's discussion of the honest-and-reasonable-attempt inquiry may be dictum. The court had already decided that the debtor's documents failed to satisfy the second *Beard* Test element, and there was no reason for the court to further discuss or consider the fourth *Beard* Test element of whether the debtor acted honestly and reasonably on the facts of that case. Had the debtor's delinquency, and his subjective reasons for it, truly been the deciding issue, then resolution of the case by summary judgment (in favor of the IRS) would have been improper and the case should have been remanded for an evidentiary hearing.

Third, even though the Ninth Circuit did conclude as a matter of law that the debtor's documents did not represent an honest and reasonable attempt to satisfy tax laws, the facts in *Hatton*, particularly the circumstances surrounding the documents at issue, were significantly different than those in this case. There, the debtor never attempted to prepare any of the documents that would have reported his tax liability himself. The IRS was completely on its own in having to make that calculation, which it ultimately did when it prepared the debtor's substitute return. Then, once the tax was determined, the debtor continued to delay any resolution with months of negotiations before entering into the installment agreement. Also, at no point did the debtor contest

the amount of his tax liability calculated by the IRS and set forth his own calculation. As the Ninth Circuit pointed out, "[the debtor] never filed a return and only cooperated with the IRS once collection became inevitable." *Id.* at 1061.

Here, in contrast, the Martins did not rely on the IRS's calculation of their tax liability nor did they wait until the last possible moment to accept responsibility. Instead, the Martins hired an accountant and commissioned the preparation of their own Form 1040s shortly after receiving the IRS's 90-day letter. Although the IRS did receive the Form 1040s in an untimely manner, there is no dispute that the Form 1040s were accurately and properly prepared. In fact, the IRS accepted those documents and the information contained within them and adjusted the Martins' tax liability as a result of that disclosure. Based on these facts, the court is not persuaded that the Ninth Circuit would necessarily apply *Hatton* and rule that (1) timely filing of a tax return is now a "requirement" of applicable nonbankruptcy law, and (2) the Martins' Form 1040s did not, as a matter of law, represent an honest and reasonable attempt to satisfy the tax laws.

For these reasons, it is not clear that the Ninth Circuit's discussion in *Hatton* has application in this case with regard to the time-of-filing issue. The court finds the *Hatton* decision to be distinguishable on its facts and declines to construe it as imposing a *per se* rule that requires a purported tax return be filed before the IRS makes its assessment in order to constitute a tax return under the Bankruptcy Code.

**CONCLUSION.**

Based on the foregoing, the court finds and concludes that the Martins' Form 1040 tax returns for the years 2004, 2005, and 2006 were "returns" within the meaning of § 523(a)(1)(B)(i) and § 523(a)'s hanging paragraph. The court declines to adopt either the Fifth Circuit's one-day-late result or the Sixth Circuit's post-assessment approach urged by the IRS to define what constitutes a tax return for purposes of determining dischargeability of the tax debt. Instead, the court relies on the Eighth Circuit's no-time-limit interpretation to conclude that the "requirements of applicable

nonbankruptcy law (including applicable filing requirements)" do not include a temporal restriction.

Accordingly, the IRS's Motion will be denied, and the court will enter judgment in favor of the Martins declaring that their 2004, 2005, and 2006 federal income tax debt was discharged in this chapter 7 bankruptcy.

Dated: March 31, 2014

W. Richard Lee
United States Bankruptcy Judge

**Instructions to Clerk of Court**
**Service List - Not Part of Order/**Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and _X__ Other Persons Specified Below:

Thomas M. Rohall, Esq. (via the U.S. Mail)
Attorney at Law
4330 Watt Avenue, #470
SA 2801
Sacramento, CA 95821-7012

Boris Kukso, Esq. (via the U.S. Mail)
Attorney at Law
P.O. Box 683
Washington, D.C. 20044

Kevin Wayne Martin (via the U.S. Mail)
Susan Martin
12 Mary Lane
Bishop, CA 93514

Office of the U.S. Trustee
U.S. Courthouse
2500 Tulare Street, Suite 1401
Fresno, CA 93721